### SYLVAN SEAL MILK, Inc. v. COMMODITY CREDIT CORP.

No. 10995.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 28, 1951.

Decided June 5, 1952.

Francis E. Hickey, Rockford, Ill., of the Bar of the Supreme Court of Illinois, *pro hac vice,* by special leave of Court, with whom William S. Abell, Washington, D. C., was on the brief, for appellant.

Hubert H. Margolies, Attorney, Department of Justice, Washington, D. C., with whom George Morris Fay, United States Attorney at the time the brief was filed, and Edward H. Hickey, Attorney, Department of Justice, Washington, D. C., were on the brief, for appellee. Charles M. Irelan, United States Attorney at the time of argument, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., also entered appearances on behalf of appellee.

Before KIMBROUGH STONE, Circuit Judge, retired (sitting by designation), and WILBUR K. MILLER and BAZELON, Circuit Judges.

PER CURIAM.

Order No. 61 was promulgated as part of a price support program under the Agricultural Adjustment Act.[1] It required appellant, a dairy handler, to pay producers a specified minimum price for Class I milk distributed for fluid consumption in the Philadelphia, Pennsylvania, milk marketing area.[2] The boundaries of that area were precisely described in the order by metes and bounds, all within the Commonwealth of Pennsylvania. In April 1943, the minimum price to be paid producers under the Order was increased from $3.70 per hun-

---

1. 48 Stat. 31 (1933), as amended, 7 U.S.C. A. §§ 601, 608c (Supp.1951).

2. Hereafter referred to as the "Philadelphia area."

dredweight to $4.05 per hundredweight. Its effect was to squeeze the handlers between this increase and the OPA retail ceiling price for milk in the same area, which remained fixed at fourteen cents a quart. It was to eliminate this squeeze and thereby assure a flow of milk into the Philadelphia area that the appellee, Commodity Credit Corporation, offered to pay a monthly subsidy of the 35 cent differential to handlers of milk "distributed for fluid consumption * * * in the Philadelphia, Pennsylvania, milk marketing area." The offer provided the term "Philadelphia, Pennsylvania, milk marketing area" should have the same meaning as was given by Order No. 61.

On its face, appellee's offer did not include milk distributed in nearby New Jersey. The purpose of limiting the area for the offer lay in the fact that the OPA retail price in New Jersey was fixed at fifteen cents a quart rather than at fourteen cents, as in the Philadephia area. Thus since sales in New Jersey produced from 44 to 46 cents[3] more per hundredweight than sales in the Philadelphia area, no reason existed for including the New Jersey handlers within the subsidy offer.

This suit arose from a dispute concerning the payment of subsidies for milk distributed by appellant in New Jersey on overlapping routes, i. e., on routes which also included stops in the Philadelphia area. Appellant rests its claim for these subsidies upon the contentions that (1) the "course of conduct and conversation" of one W. P. Sadler, acting as agent of appellee and also as Milk Marketing Administrator under Order No. 61 "modified the terms of [appellee's] offer so as to include milk distributed on overlapping routes";[4] and (2) appellee's payment of these subsidies from the date of its original monthly offer in April 1943 until September 1943 created a binding agreement to continue payment under subsequent offer.

In detailed findings of fact, conclusions of law[5] and oral opinion,[6] the District Court rejected these contentions and en-

tered judgment dismissing appellant's suit. Since we think the findings amply supported by the evidence, we agree with the District Court that appellant is not entitled to the subsidy payments in question.

Affirmed.

---

3. There are 44 to 46 quarts in a hundredweight.

4. Brief for Appellant, p. 5.

5. J. A., pp. 14–22.

6. Id. at 119–11.